# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Jeremy W. Gragg, being first duly sworn, do hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application for a search warrant for information associated with the following Facebook account: Facebook Username "Cortez Handsume" or User ID "100088549909740" (hereinafter "**Target Account**"), that is stored at premises owned, maintained, controlled, or operated by Facebook, a social-networking company owned by Meta Platforms, Inc. ("Facebook") and headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), to require Facebook to disclose to the Government records and other information in its possession, including the contents of communications, pertaining to the subscriber or customer associated with the **Target Account**.

2.  I am a detective with the Kansas City, Missouri Police Department ("KCPD") and have been employed by KCPD since August 2012. I have been a detective within KCPD's Gang Squad since October 2022, conducting investigations revolving around the illegal possession of firearms within the Kansas City metropolitan area. During my tenure with the Gang Squad, I have communicated extensively with other state and federal law enforcement personnel who specialize in drug and firearm investigations. I have also had experience in debriefing defendants, participating witnesses, informants, and other persons who have personal experience and knowledge with regard to various firearm related crimes.

3.  This affidavit contains information necessary to support probable cause for this application. It is not intended to include every fact or matter observed by me or known by law

enforcement. The information provided is based on my personal knowledge and observation during the course of this investigation, information conveyed to me by others, and my review of records, documents, and other physical evidence obtained during the investigation.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846, that is, distribution of, possession with the intent to distribute, and conspiracy to distribute controlled substances; 18 U.S.C. § 922(g)(1), that is, felon in possession of a firearm; and 18 U.S.C. § 2, that is, aiding and abetting the foregoing offenses (hereinafter the "**Target Offenses**"), have been committed by **Cortez GRAGG** and others both known and unknown. There is also probable cause to search the **Target Account** for information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## **PROBABLE CAUSE**

5. On August 21, 2023, at approximately 8:43 p.m., KCPD Officer Dempsey, Officer Powell, and Officer Thompson were dispatched to 3800 Gregory Boulevard, Kansas City, Missouri, in regard to a disturbance. This location is within the Western District of Missouri.

6. Officer Dempsey contacted the store owner, who reported that two males had been inside of the store harassing other patrons of the business throughout the day. Officer Dempsey, Officer Powell, and Officer Thompson entered the business and observed two black males, later identified as **GRAGG** and Daekwon C. GILES, standing at the front counter. **GRAGG** and GILES began making furtive movements near their waistbands as they turned to look at the officers. Officer Thompson observed that GILES had an extended magazine extending out from underneath his shirt, consistent with GILES possessing a firearm. GILES

2

ignored verbal commands from the officers to show his hands and turned away from Officer Thompson. GILES moved behind **GRAGG** and toward the cooler aisle before disappearing from sight momentarily. Officers continued to give GILES verbal commands and he refused to comply. He walked around the isles of the store as if looking for an avenue of escape. Upon the arrival of additional officers, GILES was taken into custody after attempting to pull away from Sergeant Stillman. He was no longer in possession of the suspected firearm with an extended magazine. A computer check of GILES showed a felony warrant from Missouri Probation and Parole and a Jackson County, Missouri felony warrant for hit and run. GILES was determined to be a convicted felon.

7. Officer Thompson observed **GRAGG** holding what appeared to be the stock of a rifle inside his waistband. **GRAGG** slowly removed the rifle from his waistband as Officer Thompson began giving him verbal commands to drop the firearm on the ground. **GRAGG** slowly placed the rifle on the ground before moving away from officers toward the cooler aisle. **GRAGG** appeared to be searching for an exit and an opportunity to run. Officer Thompson took physical control of **GRAGG** and took him into custody. A computer check of **GRAGG** showed a felony warrant from the Kansas Department of Corrections for interference with law enforcement. **GRAGG** was also determined to be a convicted felon.

8. During a search incident to arrest, **GRAGG** was found to have a small black zippered bag on his person. Officer Dempsey conducted an inventory of the contents and located two pill bottles in the bag. One of the pill bottles contained 8.5 multi-colored pills of different designs. A test of the pills using the TruNarc device showed the presence of methamphetamine. An iPhone was found to have been left on the counter by one of the subjects (subsequently determined to be GILES), and it was recovered.

9. A handgun with an extended magazine consistent with what was observed in GILES's possession was located on a shelf near the alcohol. Officer Powell and Officer Thompson retrieved the handgun, identified as a Glock brand, 21 model, .45-caliber handgun bearing serial number AFBX669. The handgun was loaded with 33 live rounds of .45-caliber ammunition. Officer Thompson observed a silver switch on the back of the slide that I know, based on my training and experience, is commonly utilized to convert a handgun to fire as a fully automatic machine gun.

10. The rifle that **GRAGG** had in his waistband was recovered from the ground where he placed it. It was identified as a Ruger brand, 10/22 model, .22-caliber rifle bearing serial number 24342344. The rifle was loaded with 19 live rounds of .22-caliber ammunition.

11. Officer Thompson reviewed surveillance video from the business, which showed **GRAGG** and GILES at the counter prior to officers' arrival. Officer Dempsey and Officer Thompson entered the business and **GRAGG** looked over his left shoulder at the officers before reaching toward his waistband. GILES turned and looked at Officer Dempsey and Officer Thompson before turning toward the officers, exposing an extended magazine from his waistband. GILES adjusted what appears to be a handgun before placing his hands in the air and walking backward toward the cooler aisle. GILES could be seen removing a black firearm from inside the front of his pants and he placed it on the shelf near the alcohol. **GRAGG** was seen on video removing the rifle from his waistband before moving away from the officers toward the center aisle.

12. **GRAGG** has multiple prior felony convictions, including convictions for first degree robbery and armed criminal action in Jackson County, Missouri, court file number 1616-CR04098-01, on or about February 2, 2018.

13. On August 22, 2023, at approximately 10:04 a.m., Detective Tim Sims questioned **GRAGG** in regard to this offense after reading him the *Miranda* warning. **GRAGG** admitted to possessing the gun that officers observed in his waistband and that he got it from his cousin. **GRAGG** stated that he intended to use the gun for shooting ducks and was planning on shooting cans down at the pond at Gregory Boulevard. **GRAGG** admitted that he was a felon but thought he could possess a gun because he was a non-violent felon.

14. ATF Special Agent Stephen White, who is trained as an interstate nexus expert for the Bureau of Alcohol, Tobacco, Firearms, and Explosives, provided a verbal confirmation that the Ruger brand, 10/22 model, .22-caliber rifle bearing serial number 24342344, and the Glock brand, 21 model, .45-caliber handgun bearing serial number AFBX669, were not manufactured within the State of Missouri and therefore previously traveled in interstate commerce.

15. On August 22, 2023, I was contacted by Special Agent Jason Kramer, Kansas Department of Corrections. Special Agent Kramer advised that he had been looking for **GRAGG** to arrest him for his outstanding felony warrant. Special Agent Kramer said that on or about August 21, 2023, he was reviewing the **Target Account**, which he knew to be associated to **GRAGG**. Special Agent Kramer said that on the Facebook Story of the **Target Account**, he observed a gun emoji with the words "for sale" and a price listed of a few hundred dollars.

16. On August 25, 2023, I reviewed public posts made by the **Target Account**, and observed several photographs of an individual I recognized as **GRAGG** based on prior personal interactions with him. On August 24, 2023, a live video was posted to the **Target Account** showing **GRAGG** on a video phone call from a detention area in Bate's County, Missouri. The live video was posted to the **Target Account** and narrated by a black female I know to be T.G.,

5

**GRAGG's** aunt. T.G. was the person that **GRAGG** asked for his property to be released to after his arrest. On August 24, 2023, there was a post to the **Target Account** reading, "If anyone want to put money on my nephew books hit the inbox." These two posts to the **Target Account** were made after **GRAGG's** arrest on August 21, 2023.

17. I am aware from assisting in prior investigations that suspects will commonly use Facebook to communicate with other persons. I have conducted Facebook account analysis on numerous subjects regarding firearms and narcotics investigations, and know that suspects will commonly communicate with other suspects using Facebook to facilitate the sale and purchase of firearms and narcotics. I believe that the **Target Account** will contain information relating to **GRAGG** buying and/or selling firearms and narcotics. Accordingly, I believe the **Target Account** will yield evidence of the **Target Offenses**.

18. On August 24, 2023, I submitted a preservation request for the **Target Account** through the Facebook Law Enforcement Portal.

*Information Regarding Facebook*

19. From my review of publicly available information provided by Facebook about its service, including Facebook's "Privacy Policy," I am aware of the following about Facebook and about the information collected and retained by Facebook.

20. Facebook owns and operates a free-access social-networking website of the same name that can be accessed at http://www.Facebook.com. Facebook allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and other information. Users can access Facebook through the Facebook website or by using a special electronic application ("app") created by the company that allows users to access the service through a mobile device.

21. Facebook permits users to post photos to their profiles on Facebook and otherwise share photos with others on Facebook, as well as certain other social-media services, including Flickr, Facebook, and Twitter. When posting or sharing a photo on Facebook, a user can add to the photo: a caption; various "tags" that can be used to search for the photo (*e.g.*, a user may add the tag #vw so that people interested in Volkswagen vehicles can search for and find the photo); location information; and other information. A user can also apply a variety of "filters" or other visual effects that modify the look of the posted photos. In addition, Facebook allows users to make comments on posted photos, including photos that the user posts or photos posted by other users of Facebook. Users can also "like" photos.

22. Upon creating a Facebook account, a Facebook user must create a unique Facebook username and an account password. This information is collected and maintained by Facebook.

23. Facebook asks users to provide basic identity and contact information upon registration and also allows users to provide additional identity information for their user profile. This information may include the user's full name, e-mail addresses, and phone numbers, as well as potentially other personal information provided directly by the user to Facebook. Once an account is created, users may also adjust various privacy and account settings for the account on Facebook. Facebook collects and maintains this information.

24. Facebook allows users to have "friends," which are other individuals with whom the user can share information without making the information public. Friends on Facebook may come from either contact lists maintained by the user, other third-party social media websites and information, or searches conducted by the user on Facebook profiles. Facebook collects and maintains this information.

25. Facebook also allows users to "follow" another user, which means that they receive updates about posts made by the other user. Users may also "unfollow" users, that is, stop following them or block them, which prevents the blocked user from following that user.

26. Facebook allows users to post and share various types of user content, including photos, videos, captions, comments, and other materials. Facebook collects and maintains user content that users post to Facebook or share through Facebook.

27. Facebook users may send photos, videos, and "Facebook messages" to select individuals or groups via Facebook Direct or Facebook Messenger. Information sent via Facebook Direct does not appear in a user's feed, search history, or profile.

28. Users on Facebook may also search Facebook for other users or particular types of photos or other content.

29. For each user, Facebook also collects and retains information, called "log file" information, every time a user requests access to Facebook, whether through a web page or through an app. Among the log file information that Facebook's servers automatically record is the particular web requests, any Internet Protocol ("IP") address associated with the request, type of browser used, any referring/exit web pages and associated URLs, pages viewed, dates and times of access, and other information.

30. Facebook also collects and maintains "cookies," which are small text files containing a string of numbers that are placed on a user's computer or mobile device and that allow Facebook to collect information about how a user uses Facebook. For example, Facebook uses cookies to help users navigate between pages efficiently, to remember preferences, and to ensure advertisements are relevant to a user's interests.

31. Facebook also collects information on the particular devices used to access Facebook. In particular, Facebook may record "device identifiers," which include data files and other information that may identify the particular electronic device that was used to access Facebook.

32. Facebook also collects other data associated with user content. For example, Facebook collects any "hashtags" associated with user content (*i.e.*, keywords used), "geotags" that mark the location of a photo and that may include latitude and longitude information, comments on photos, and other information.

33. Facebook also may communicate with the user, by email or otherwise. Facebook collects and maintains copies of communications between Facebook and the user.

34. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element, or, alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's account activity, IP log, stored electronic communications, and other data retained by Facebook can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, direct messaging logs and/or Facebook Messenger logs, shared photos and videos, and captions (and the data associated with the foregoing, such as geo-location, date, and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the IP addresses from which users access their accounts along with the time and

date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (*e.g.*, information indicating a plan to commit a crime), or consciousness of guilt (*e.g.*, deleting account information in an effort to conceal evidence from law enforcement).

35. Based on this information, the computers of Facebook are likely to contain all the material described above with respect to the **Target Account**, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, which would include information such as the IP addresses and devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

36. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the Government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

37. Based on the foregoing, I request that the Court issue the proposed search warrant.

38. This Court has jurisdiction to issue the requested warrant to Facebook because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offenses being investigated. 18 U.S.C. § 2711(3)(A)(i).

39. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

40. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. For example, should a source of supply for controlled substances

Search Warrant No.: 23-SW-00429-LMC

be discovered on **GRAGG's** account, these documents could compromise an investigation into that individual. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Det. [signature] #5008
Jeremy W. Gragg
Detective
Kansas City, Missouri Police Department

Subscribed and sworn to before me via telephone or other reliable electronic means on this **30th** day of August 2023.   Sworn to by telephone
9:26 AM, Aug 30, 2023

_____
HONORABLE LAJUANA M. COUNTS
United States Magistrate Judge
Western District of Missouri



12

Case 4:23-sw-00429-LMC   Document 1-1   Filed 08/30/23   Page 12 of 12